UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

SEDRICK NED, ET AL                    CIVIL ACTION NO. 11-CV-514

VERSUS                                JUDGE MINALDI

CHEMICAL WASTE
MANAGEMENT, INC.                      MAGISTRATE JUDGE HANNA

### Report and Recommendation

Before the undersigned, on referral from the District Judge, are the Motion for Summary Judgment by KMCO, L.P. [Rec. Doc. 40] and the Cross-Motion for Partial Summary Judgment by Chemical Waste Management Inc. [Rec. Doc. 45] For the reasons set out below, it recommended that both motions be DENIED.

***General Background and Positions of the Parties:***

This suit arises from the alleged release of toxic chemicals from the Chemical Waste Management Facility in Carlyss, Louisiana on October 15, 2010.  Chemical Waste Management, Inc.[CWM] received and treated a load of filter cake waste to render the waste amenable to landfill disposal.  The waste emitted strong and offensive odors after treatment, and over 10,000 individual claimants have alleged injuries and filed lawsuits as a result of the odor release from the CWM facility.  The party which submitted the filter cake waste for treatment at CWM was identified to be KMCO, L.P.[KMCO].

Before the subject waste treatment event, the customer, KMCO completed an online Generator's Hazardous Waste Profile Sheet, containing a description of the waste material to be treated. [Rec. Doc. 40-2] In response, CWM sent a pre-shipment Confirmation Letter approving/accepting the waste material, and providing pricing information and details. That letter was later signed by KMCO's manager. [Rec. Doc. 40-3] The waste treatment was completed, and the customer made payment for the treatment services.

In response to the suit[1] filed against it, CWM filed a Third-Party Demand against KMCO [Rec. Doc. 1-1, p. 23], seeking defense and indemnity from the third party defendant based on allegations of breach of contract and/or negligence. In the Motion for Summary Judgment [Rec. Doc. 40], KMCO  asserts that there is no contract between KMCO and CWM which would entitle CWM to defense/indemnity, and KMCO never agreed to assume such obligations to CWM. CWM has filed a Cross-Motion for Summary Judgment [Rec. Doc. 44], urging that it is entitled to defense and indemnification from KMCO based on the three documents described below, which it asserts should be "collectively construed together as the CWM/KMCO Contract." [Rec. Doc. 44, p. 5] In that construction, according to

---

[1]This litigation was commenced in state court in the 14th Judicial District Court of Calcasieu Parish, Case Number 2010-5589.  It was removed to this court on March 30, 2011. [Rec. Doc. 1]

CWM, the referenced indemnity provisions are applicable to the parties.

*The Documents at Issue:*

<u>*The Generator's Hazardous Waste Profile Sheet*</u> [Rec. Doc. 40-2] is a form document bearing the logo of 'Waste Management.' The completed form describes the waste product  to be treated by CWM.  It is signed by KMCO's Environmental Manager Bill Glushko. At the top of the first page, directly under the title,  appears the following:

> Service Agreement on file? ☐ Yes ☐ No   Profile Number LA950423
> [Rec. Doc. 40-2, p. 1]

Neither box is marked.

<u>*The Confirmation Letter*</u> was sent to Mr. Glushko on or about September 8, 2010.  It includes the following language:

> All terms are governed by the Agreement previously executed between our companies....  If we have not previously concluded a Service Agreement with your company, one is enclosed for your convenience. Please sign and return it to us as soon as possible. [Rec. Doc. 40-3, p. 4]

The letter bears the signatures of Glushko and that of Demita Dozier, for CWM.  The KMCO representative has testified that he did not recall a service agreement being attached to the letter. [Rec. Doc. 40-6, p. 3] The CWM employee who sent the letter has confirmed that no service agreement was attached, since she understood that an applicable Agreement was in place. [Rec. Doc. 40-4, pp. 3-4, 7]

-3-

The Generator's Hazardous Waste Profile Sheet and the Confirmation Letter are the only documents specifically identifying KMCO and CWM as parties to any kind of agreement.

_The Industrial Waste Service Agreement_ at issue in this litigation was executed in October, 2000, between Waste Management of Texas, Inc., KMCO and KMTEX, all Texas companies. [Rec. Doc. 40-5] The name of Chemical Waste Management Inc. does not appear on the document, which includes the following provisions:

1. SERVICES PROVIDED
    We will, through our affiliated companies and their operating divisions, provide you with analytical, collection, management, transportation, disposal and recycling services for your non-hazardous solid waste, special waste, medical waste and/or hazardous waster(collectively "industrial waste") as described on Exhibit A.
    When we handle special or hazardous waste for you, you will provide us with a Generator's Waste Profile Sheet("Profile Sheet") describing all special or hazardous waste, and provide a representative sample of such waste on request.
    You warrant that no non-hazardous solid waste you deliver to us is a regulated special or hazardous waste.  You warrant that you will provide a true and correct description of your special and hazardous waste, and that such waste will conform to this description.  ....

2. INDEMNIFICATION
    We agree to indemnify, defend and save you harmless from and against any and all liability which you may be responsible for or pay out as a result of bodily injuries(including death), property damage, or any violation or alleged violation of law, to the extent caused by any negligent act, negligent omission or willful misconduct of us or our employees, which occurs (1) during the management, collection or transportation of your industrial waste, or (2) as a result of the disposal

-4-

of your industrial waste, after the date of this Agreement, in a facility owned by us or our affiliated companies; provided that our indemnification obligations will not apply to occurrences involving non-conforming waste.

You agree to indemnify, defend and save us harmless from and against any and all liability which we may be responsible for or pay out as a result of bodily injuries(including death), property damage, or any violation or alleged violation of law to the extent caused by your breach of this Agreement or by any negligent act, negligent omission or willful misconduct of your or your employees, agents or contractors in the performance of this Agreement. .... [Rec. Doc. 40-5]

The terms "we," "you," and "us" are not defined in the Agreement. The document is signed by representatives of KMCO/KMTEX and Waste Management of Texas, Inc. Neither of the signatories were involved in the KMCO/CWM transaction at issue.

### *Applicable Law and Discussion*

*Summary Judgment*:

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable substantive law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Minter v. Great American Ins. Co. of New York*, 423 F.3d 460, 465 (5th Cir. 2005). A genuine issue of material fact exists if a reasonable jury could render

a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine issue of material fact. *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact. *Id.* All facts and justifiable inferences are construed in the light most favorable to the nonmovant. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5 Cir. th 2008), *citing Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim. *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008), *citing Celotex Corp. v. Catrett*, 477 U.S. at 325. The motion should be granted if the non-moving party cannot produce evidence to support an essential element of its claim. *Condrey v. SunTrust Bank of*

*Georgia*, 431 F.3d 191, 197(5th Cir. 2005).

Finally, when evaluating cross-motions for summary judgment, the "[c]ross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538-39 (5th Cir.2004).   Cross motions do not relieve the trial court of its duty to determine the appropriateness of making a summary disposition of the case, since it is conceivable that both parties may have failed to meet their burden of proving that they are entitled to summary judgment, in which case the court properly denies both motions.

*Substantive Law*:

Louisiana law governs the substantive legal questions in this case.   In Louisiana, the interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045.  When the words of a contract are clear, explicit, and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.  La. C.C. art. 2046.   A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.  La. C.C. art. 2053.  Words used in a contract must be given their

-7-

generally prevailing meaning. La. C.C. art. 2047.  Each provision of a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050.

The issues in this case arise out of the parties' interpretations of these legal provisions, as applied to the interactions and agreements between them.  "Whether an ambiguity exists in contractual language is a question of law for the court.*" Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 320 (5th Cir.1991) (applying Louisiana law) (citation omitted). "A contract is ambiguous only if its terms are unclear or susceptible to more than one [reasonable] interpretation, or the intent of the parties cannot be ascertained from the language employed.*" Gebreyesus v. F.C. Schaffer & Assoc., Inc.*, 204 F.3d 639, 643 (5th Cir.2000) (applying Louisiana law); *see also TIG Ins. Co. v. Eagle Inc.*, 294 Fed.Appx. 920, 923-24 (5th Cir.2008) (applying Louisiana law and employing the 'reasonable' language included above). "Importantly, Louisiana law 'does not allow the parties to create an ambiguity where none exists and does not authorize courts to create new contractual obligations where the language of the written document clearly expresses the intent of the parties.' " *Shocklee v. Mass. Mut. Life Ins. Co.*, 369 F.3d 437, 440 (5th Cir.2004) (*quoting Omnitech Int'l, Inc. v. Clorox Co.*, 11 F. 3d 1316, 1326 (5th Cir.1994)**).**

-8-

**The KMCO Motion:**

In the Motion for Summary Judgment[Rec. Doc. 40], KMCO asserts that there is no contract between KMCO and CWM which would entitle CWM to defense/indemnity, and KMCO never agreed to assume such obligations to CWM, having made such agreement only with Waste Management of Texas, Inc.    T h a t agreement, executed ten years before the incident at issue, contains no reference to CWM, but does make reference within its pages to the Texas company's "affiliated companies." Specifically, in the SERVICES section, the agreement contemplates that services under the agreement will be performed "through our affiliated companies and their operating divisions." [Rec. Doc. 40-5] In the INDEMNIFICATION section, the agreement contemplates that Waste Management of Texas, Inc. will indemnify KMCO as a result of the disposal of its industrial waste "in a facility owned by us or our affiliated companies." [Rec. Doc. 40-5] The term "affiliated companies" is not defined in the Agreement.

CWM discovery responses declare that "CWM and WMT are affiliated companies," but they "are not the same entity," [Rec. Doc. 40-8] and the CWM Corporate Disclosure Statement offers that "Technically, Waste Management Inc. does not own stock in Chemical Waste Management, Inc...." [Rec. Doc. 40-7]

The language in the Confirmation Letter, sent to KMCO by CWM and signed

by KMCO's representative, suggests that there was an agreement in place between the two companies. [Rec. Doc. 40-3] No party questioned the reference during the business transaction process.  Deposition testimony confirms that Demita Dozier was the person who signed and transmitted the Confirmation Letter to be signed by KMCO's manager; she had responsibility for handling  service agreement issues for CWM. [Rec. Doc. 40-4, pp. 3-6]  Dozier could not say whether there was a service agreement on file at the time the KMCO waste profile sheet was submitted, but she confirmed her understanding that an agreement was on file by the time she sent the confirmation letter. [Rec. Doc. 40-4, pp. 3-4, 6-7]  She testified that the agreement was a standard form document, "the same from state to state."[Rec. Doc.40-4, p. 5] She offered her understanding that the document "would cover all of the Waste Management entities that they were doing business with." [Rec. Doc. 40-4, p. 13] Nevertheless, Dozier also testified that contracts generated out of the Lake Charles CWM facility would reference Chemical Waste Management, Inc. instead of Waste Management of Texas, Inc. [Rec. Doc. 40-4, pp. 17-18] She examined the Agreement at issue and confirmed that the agreement is between KMCO and Waste Management of Texas, Inc., which she described to be "just an entity of Waste Management." [Rec. Doc. 40-4, pp. 10-11] Dozier acknowledged that she is not an attorney, and she expressed only her understanding of the use of the agreement based on her training

on the job. [Rec. Doc. 40-4, p. 13] She likewise conceded that she does not know the legal relationships between/among the Waste Management entities. [Rec. Doc. 40-4, pp. 16-17]

Based on the summary judgment record, it is far from clear what the connection is between Waste Management of Texas, Inc., the party to the Agreement at issue, and CWM, the party seeking to enforce the Agreement.  It is clear, however, that WMT contemplated and declared in the Service Agreement that some of the work/services to be performed for KMCO would be performed by "affiliated companies." Further, as referenced in the Agreement, the defense/indemnity provisions seem to bind WMT for the negligent actions of its employees occurring as a result of waste disposal "in a facility owned by us or our affiliated companies; ...." [Rec. Doc. 40-5] It is also apparent from the summary judgment record that KMCO dealt directly with CWM during the transaction at issue, acknowledging in the confirmation letter,  by the signature of its representative, the existence of some type of contract between the parties.  The record contains several ambiguities and issues of material fact regarding the applicability of the Service Agreement to the dispute at issue in this litigation.  The court finds that these ambiguities and issues of material fact are fatal to the summary judgment motion as presented by KMCO.

**THE CWM MOTION:**

CWM has filed a Cross-Motion for Summary Judgment on its Contract Indemnity Claims. [Rec. Doc. 45] In the motion, CWM urges that it is entitled to indemnification from KMCO as a matter of law, for losses that CWM may incur arising out of KMCO's breach of the "CWM/KMCO Contract" by sending non-conforming waste to CWM. [Rec. Doc. 45-1, p. 6] Acknowledging the same issue raised in the KMCO motion, CWM identifies the critical question to be whether there is a contract between the parties that includes an indemnity provision. [Rec. Doc. 45, p. 2] CWM asserts that the "the MSA identifies the parties with whom KMCO is contracting as WMT and its "affiliated companies," and dictates the MSA's application" to services provided by affiliated companies to KMCO. [Rec. Doc. 45-1, p. 7] As noted above, based on the summary judgment record, it is far from clear what the connection is between Waste Management of Texas, Inc., the party to the Agreement at issue, and CWM, the party seeking to enforce the Agreement.  It is clear, however, that WMT contemplated and declared in the Agreement that some of the work/services to be performed for KMCO would be performed by "affiliated companies."  Further, as referenced in the Agreement, the defense/indemnity provisions seem to bind WMT for the negligent actions of its employees occurring as a result of waste disposal "in a facility owned by us or our affiliated companies; ...." [Rec. Doc. 40-5, p. 1] Significantly, the "affiliated

-12-

companies" reference does not appear in the paragraph describing KMCO's defense/indemnity responsibilities; only the pronoun "us" is used. [Rec. Doc. 40-5, p. 1]

CWM argues that the Agreement should be considered in combination with the Confirmation Letter to form the "CWM/KMCO Contract," urging that the reference in the letter to "the Agreement previously executed between our companies" serves to apply the Agreement to the transaction at issue.  One of the problems with that notion is that the Confirmation Letter allows for the situation where there is no agreement executed between the companies, providing for the presentation of a new agreement in that event.  The record demonstrates that the KMCO representative involved in the transaction did not acknowledge the existence of such an agreement at the time of submission of the profile sheet; the CWM representative had no discussion with KMCO about the issue before the issuance of the Confirmation Letter [Rec. Doc. 40-4, p. 8], and the only agreement in the record makes no reference to CWM on its face, contrary to the practice described by Damita Dozier for agreements generated from the Lake Charles CWM location. [Rec. Doc. 40-4, pp. 17-18] Based on her understandings of company practices, Ms. Dozier decided not to include a new agreement form with the confirmation letter, which form would likely have included the reference to CWM, by her testimony.

-13-

On the other hand, KMCO's representative Bill Glushko signed the Confirmation Letter as presented. [Rec. Doc. 40-3]

Under general contract principles, where a contract expressly refers to and incorporates another instrument in specific terms which show a clear intent to incorporate that instrument into the contract, both instruments are to be construed together. See 11 Williston on Contracts § 30:25 (4th ed. 1999) ("Where a writing refers to another document, that other document, or the portion to which reference is made, becomes constructively a part of the writing, and in that respect the two form a single instrument."). *One Beacon Ins. Co. V. Crowley Marine Services, Inc.*, 648 F.3d 258, 267(5th Cir. 2011). In this case, however, the confirmation letter references an "Agreement previously executed between our companies," and it remains a matter of dispute in the record whether the WMT/KMCO service agreement executed ten years earlier fits that less-than-specific description.

After considering the summary judgment record, this Court finds that the relationships between/among KMCO, WMT and CWM, and the applicability of the Service Agreement to the transaction made subject of this litigation are far from clear. The terms of the Agreement, even when considered with the Confirmation Letter are unclear and susceptible to more than one [reasonable] interpretation, and

the intent of the parties cannot be ascertained from the language employed.  These critical factual issues  remain in dispute and warrant denial of the CWM motion as presented.

### *Recommendation*

Because the applicability of the Service Agreement in the instant case is a threshold and critical issue for both parties and both of the dispositive motions before the Court, and because the record contains multiple issues of material fact as to the intentions of the parties, it is the recommendation of the undersigned that both the Motion for Summary Judgment by KMCO, L.P. [Rec. Doc. 40] and the Cross-Motion for Partial Summary Judgment by Chemical Waste Management Inc. [Rec. Doc. 45] be DENIED at this time.

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of court.  A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the

proposed legal conclusions reflected in the report and recommendation within

fourteen days following the date of its service, or within the time frame authorized

by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual

findings or the legal conclusions accepted by the district court, except upon grounds

of plain error.  See *Douglas v. United Services Automobile Association*, 79 F.3d

1415(5th Cir. 1996).

Signed at Lafayette, Louisiana this 19th day of November, 2012.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)